**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| GREGORY SOREY, on behalf of himself and all other persons similarly situated, known and unknown, | ) ) ) ) | |
| Plaintiff, | ) ) | No. |
| v. | ) ) | Judge |
| CENIKOR FOUNDATION | ) ) | |
| Defendant. | ) | |

**COLLECTIVE ACTION COMPLAINT**

Gregory Sorey ("Plaintiff"), on behalf of himself and all other persons similarly situated, files this Collective Action Complaint ("Complaint") against Cenikor Foundation ("Defendant") for violations of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA").

**Nature of Plaintiff's Claims**

1. Defendant is a non-profit organization that holds itself out as providing rehabilitation services for victims of substance addiction.

2. In reality, Defendant oppresses the victims that it claims to serve by requiring them to work long hours at for-profit companies, including Wal-Mart, Shell, and Exxon, without paying them any compensation in return for their labor. *See* Amy Julia Harris and Shoshana Walter, "Rehab Patients' unpaid work for big companies likely illegal," *Washington Post* (Apr. 24, 2019), available at https://www.washingtonpost.com/business/rehab-patients-unpaid-work-for-big-companies-likely-illegal/2019/04/24/43cd0b94-6694-11e9-a698-2a8f808c9cfb_story.html?noredirect=on&utm_term=.e7c4440882fa (last visited May 1, 2019).

3. Defendant gets paid for each hour of labor its "residents" – who are supposed to be recovering from addition – provide to third-party companies and individuals, including an overtime premium when residents work over 40 hours in a week, yet Defendant passes none of that compensation onto the individuals who performed the work.

4. Defendant claims that the residents' labor covers the cost of their housing, food, and treatment.

5. In reality, residents' lodging, food, and occasional treatments are paid for by government programs like food stamps and Medicaid.

6. As a result, Defendant violated the minimum wage provisions of the FLSA by not paying Plaintiff and other residents – who qualify as Defendant's employees – at least $7.25 per hour.

7. In addition, Defendant violated the overtime provisions of the FLSA by failing to pay Plaintiff and other residents at least one and one-half times their regular rate of pay when they work over 40 hours in individual workweeks.

8. Plaintiff brings his FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b).

9. Plaintiff's consent form to act as a representative party plaintiff in this FLSA collective action is attached to this Complaint as Exhibit A.

**Jurisdiction and Venue**

10. This Court has jurisdiction over Plaintiff's FLSA claims, which arise under 29 U.S.C. § 216(b), pursuant to 28 U.S.C. § 1331.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred in this district.

**The Parties**

12. Plaintiff is an individual who resides in and is domiciled in this judicial district.

13. Plaintiff was employed by Defendant from approximately December 2017 to May or June 2018.[1]

14. Defendant is a Texas non-profit organization with offices in Texas and Louisiana.

**Background Facts**

15. Plaintiff entered Defendant's Baton Rouge facility on approximately November 17, 2017.

16. For the first 30 days, Plaintiff went through "orientation" taught by other residents of the facility who, like him, were supposed to get addiction treatment.

17. As a condition of Plaintiff living in Defendant's facility, he was required to declare himself indigent so he could get food stamps and Medicaid.

18. As a condition of Plaintiff living in Defendant's facility, he was prohibited from possessing any money, credit cards, gift cards, or even his food stamps card.

19. After living at Defendant's facility for 30 days, Defendant required him to work outside the facility for third-party companies and individuals, including for-profit companies.

20. Plaintiff had no ability to influence where he was required to work or the type of work he would perform.

21. Plaintiff had to work wherever Defendant's Vocational Services Manager sent him.

22. Among other places, Defendant required Plaintiff to work at PCS Chemical (for approximately five to six months), QIC (for approximately four months), and Total Petrochemicals

---

[1] Plaintiff was previously employed by Defendant from approximately 2008-2013. None of the allegations in this Complaint apply to this previous period of employment.

3

& Refining USA, Inc. (for approximately three months), which is part of one of the largest oil and gas companies in the world. http://www.totalpetrochemicalsrefiningusa.com/ (last visited April 30, 2019).

23. At these jobs, Plaintiff primarily worked as a general laborer. For example, at QIC he swept and shoveled corn and at PCS Chemical and Total Petrochemicals he set up scaffolding.

24. He also performed welding work for part of his time with QIC.

25. On Mondays through Thursdays, Plaintiff's typical work schedule for his main job was 6:00 a.m. to 4:30 p.m., with a 30 minute lunch break.

26. On Fridays, Saturdays, and many Sundays Defendant required Plaintiff to do "sidework" at a different business or individual's home.

27. Examples of Plaintiff's sidework include working at a bakery, moving furniture, painting houses, and doing yard work.

28. On sidework days, Plaintiff typically worked from 6:00 a.m./7:00 a.m. to 3:00 p.m./4:00 p.m.

29. Plaintiff typically worked at least 50 to 60 hours per week for Defendant, and often much more.

30. Defendant exercised control over Plaintiff's work schedule.

31. Defendant kept track of the hours Plaintiff worked by having one of its residents at the job site maintain a sign in/sign out sheet for employees.

32. A third-party representative at the work sites verified the hours worked by Defendant's residents so that the third-party knew how much to pay Defendant for the labor Defendant's residents provided.

33. Despite Defendant being paid for each hour of Plaintiff's labor, Defendant paid Plaintiff nothing for any of his work.

34. Defendant promotes its ability to provide cost-effective staffing to "business partners throughout Texas and Louisiana." http://www.cenikor.org/wp-content/uploads/2016/07/VocationalServicesTriFold_EVS.pdf (last visited May 1, 2019).

35. Because Defendant does not pay its resident employees, Defendant has an economic advantage in obtaining staffing contracts with businesses.

36. Defendant's Vocational Services Managers were eligible for bonuses based on the work contracts they obtained with third-party companies.

**Collective Action Allegations**

37. Plaintiff brings his minimum wage and overtime claims on behalf of all residents of Defendant's facilities in Louisiana and Texas in the last three years who were required by Defendant to perform work without pay ("Potential Collective Action Members").

38. There are thousands of Potential Collective Action Members.

39. Plaintiff is similarly situated to Potential Collective Action Members because they were required by Defendant to perform work for third-party companies and individuals without receiving any minimum wage or overtime compensation.

40. Defendant maintains names and contact information for Potential Collective Action Members.

41. This Court can provide supervised notice of this lawsuit to Potential Collective Action Members so that they have an opportunity to join the case and recover their owed minimum and overtime wages.

5

**FLSA Coverage**

42. Defendant is an "enterprise" as that term is defined in Section 203(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1).

43. Defendant is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 203(s)(1)(A) of the FLSA. 29 U.S.C. § 203(s)(1)(A).

44. During the course of his employment with Defendant, Plaintiff handled goods that moved in interstate commerce.

45. Defendant's volume of sales made business done has exceeded $500,000 in each of the last three calendar years.

46. Defendant was Plaintiff's "employer" as that term is defined by Section 3(d) the FLSA. 29 U.S.C. § 203(d).

47. Plaintiff was an "employee" of Defendant as that term is defined by Section 3(e) of the FLSA. 29 U.S.C. § 203(e)(1).

### COUNT I
### Violation of the Fair Labor Standards Act – Minimum Wages
### Collective Action Under 29 U.S.C. § 216(b)

Plaintiff realleges and incorporates the previous paragraphs of this Complaint as if asserted here.

48. This count arises from Defendant's violation of the FLSA, 29 U.S.C. § 206, for its failure to pay Plaintiff and Potential Collective Action Members minimum wages.

49. Defendant failed to pay Plaintiff and Potential Collective Action Members for their work on behalf of third-party companies and individuals.

50. Plaintiff and Potential Collective Action Members were not exempt from the minimum wage provisions of the FLSA.

51. Defendant cannot rely on food, lodging, and services it provided to Plaintiff and Potential Collective Action Members as a credit to satisfy its minimum wage obligations because Defendant did not incur costs equal to the minimum wages otherwise owed to Plaintiff and Potential Collective Action Members.

52. Defendant's minimum wage violations of the FLSA were willful because it knew that Plaintiff and Potential Collective Action Members were owed minimum wages based on internal and external complaints, yet it chose to ignore its obligation to pay minimum wages.

WHEREFORE, Plaintiff, for himself and others similarly situated, prays for judgment against Defendant as follows:

   A. A judgment in the amount of the owed minimum wages due to Plaintiff and others similarly situated for all time worked;

   B. Liquidated damages in an amount equal to the unpaid minimum wages;

   C. Reasonable attorneys' fees;

   D. Costs incurred in filing and prosecuting this action; and

   E. Such other and further relief as this Court deems appropriate and just.

## COUNT II
### Violation of the Fair Labor Standards Act - Overtime Wages
### Collective Action Under 29 U.S.C. § 216(b)

Plaintiff realleges and incorporates the previous paragraphs of this Complaint as if asserted here.

53. This count arises from Defendant's violation of the overtime provisions of the FLSA, 29 U.S.C. § 207, for its failure to pay overtime wages to Plaintiff and Potential Collective Action Members for all time they worked in excess of forty (40) hours per week.

54. In one or more individual workweeks during his employment with Defendant, Plaintiff worked in excess of forty (40) hours per week.

55. In one or more individual workweeks during their employment with Defendant, Potential Collective Action Members worked in excess of forty (40) hours per week.

56. Defendant did not pay Plaintiff one and one-half times his regular rate of pay for all time worked in excess of forty (40) hours during individual work weeks.

57. Defendant did not pay Potential Collective Action Members one and one-half times their regular rates of pay for all time worked in excess of forty (40) hours during individual work weeks.

58. Plaintiff was not exempt from the overtime provisions of the FLSA.

59. Potential Collective Action Members were not exempt from the overtime provisions of the FLSA.

60. Defendant's failure to pay overtime wages to Plaintiff for time worked in excess of forty (40) hours per week violated the FLSA. 29 U.S.C. § 207.

61. Defendant's failure to pay overtime wages to Potential Collective Action Members for time worked in excess of forty (40) hours per week violated the FLSA. 29 U.S.C. § 207.

62. Defendant's overtime violations of the FLSA were willful because it knew that Plaintiff and Potential Collective Action Members were owed overtime wages based on internal and external complaints, yet it chose to ignore its obligation to pay overtime.

WHEREFORE, Plaintiff, for himself and others similarly situated, prays for judgment against Defendant as follows:

A. A judgment in the amount of all overtime wages owed;

B. Liquidated damages in an amount equal to the amount of unpaid wages;

C. Reasonable attorneys' fees and costs incurred in filing this action; and

D. Such other and further relief as this Court deems appropriate and just.

Respectfully submitted,

Dated: May 1, 2019

By: /s/ Garret S. DeReus

**BIZER & DEREUS, LLC**
Attorneys for Plaintiffs
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

\*\*\*AND\*\*\*

Douglas M. Werman (dwerman@flsalaw.com)
*Pro Hac Vice* Application Forthcoming
Zachary C. Flowerree (zflowerre@flsalaw.com)
*Pro Hac Vice* Application Forthcoming
Werman Salas, P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
(312) 419-1008

*Attorneys for Plaintiff*